**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**DOUGLAS C. MAULDIN, SALLY
D. MAULDIN, Debtors; and LOST
LAKES PROPERTIES, LLC**                                   **PLAINTIFFS**

**V.**                                                    **NO. 3:22-CV-90-DMB-RP**

**SCOTT E. OLIVER**                                       **DEFENDANT**

**OPINION AND ORDER**

Alleging various state law claims arising from a business venture to develop real property, Douglas and Sally Mauldin, along with Lost Lake Properties, LLC, sued Scott Oliver asserting jurisdiction based on the Mauldins' pending bankruptcy proceeding. Oliver moves to dismiss for improper venue or, alternatively, to refer the case to the bankruptcy court in this district. Because the proceedings before this Court are related to the Mauldins' pending bankruptcy case, this action will not be dismissed but will be referred to the bankruptcy court.

**I
Procedural History**

On May 23, 2022, Douglas C. Mauldin, Sally D. Mauldin, and Lost Lakes Properties, LLC, filed a complaint in the United States District Court for the Northern District of Mississippi against Scott E. Oliver, alleging various state law claims arising from a failed business agreement to develop lots and an RV park in Perry County, Tennessee. Doc. #1. The complaint asserts that this Court "has jurisdiction over this action pursuant to 28 U.S.C. § 157(b)(2)(A) & (O), 28 U.S.C. § 1334, and 28 U.S.C. § 1367" and that the action "includes claims giving rise to federal jurisdiction over the subject matter under 29 [sic] U.S.C. § 1331, the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961–1968 (RICO); 15 U.S.C. § 1640(e) Truth in

Lending, [and] 28 U.S.C. § 1367, supplemental." *Id.* at 1. The complaint contains seven counts: "Count One, Services and Material Provided;" "Count Two, Anticipatory Repudiation;" "Count Three, Breach of Contract and Promissory Estoppel;" "Count Four, Bad Faith;" "Count Five, Breach of Fiduciary Duty;" "Count Six, Civil Conspiracy;" and "Count Seven, Fraud in the Inducement." *Id.* at 8–11. The plaintiffs seek "[a]ctual, consequential, exemplary, and punitive damages;" prejudgment interest; attorney fees and court costs; "[a] constructive and resulting trust upon all profits Scott Oliver gained" from the actions alleged in the complaint; and "[a]ny other remedy to which the Plaintiffs individually and Lost Lakes through its members may be entitled." *Id.* at 12.

On August 26, 2022, Oliver filed a motion "to dismiss this case or, alternatively, to refer the case to the U.S. Bankruptcy Court for the Northern District of Mississippi for adjudication in accordance with Rule 12(b)(3) of the Federal Rules of Civil Procedure."[1] Doc. #15. The motion is fully briefed. Docs. #16, #17, #20.

## II
## Standards

A party may move to dismiss an action based on improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). "If venue is improper, 28 U.S.C. § 1406(a) instructs district courts to dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 720 (W.D. Tex. 2013) (internal quotation marks omitted). "These provisions … authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it is brought." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). When

---

[1] Oliver initially filed the motion on August 11, 2022, Doc. #11, but the Court denied it for failure to comply with the Local Rules, Doc. #14.

2

reviewing a motion under Rule 12(b)(3), courts must "view all the facts in a light most favorable to the plaintiff" and are "permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009).

> When Congress rewrote … portions of the bankruptcy law … it made bankruptcy courts "a unit of the district court" and classified bankruptcy judges as "judicial officers of the district court." The district court may refer any or all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges within their district. Although the district court's power to refer is discretionary, district courts routinely refer most bankruptcy cases to the bankruptcy court. If the bankruptcy court later determines that the requested relief is beyond its authority, it may enter a recommendation for withdrawal of the reference to the district court that originally conferred jurisdiction. Likewise, the district court may withdraw any reference to the bankruptcy court on its own motion or on timely motion of any party.

*In re VC Macon, GA, LLC*, 608 B.R. 470, 473–74 (Bankr. S.D. Miss. 2019) (cleaned up) (citing various authorities).

### III
### Factual Allegations and Background

In July 2015, Doug Mauldin "purchased 1821.23 acres of land at Bunker Hill, Perry County, Tennessee, having 4.5 miles frontage along the Tennessee River" ("Property"). Doc. #1 at 2. In 2018, "he refinanced the loan with the FirstBank, and placed his wife Sally on the deed. It was valued at $5.6 million with a debt of $2,800,000.00 secured by the property." *Id.*

The Mauldins "became acquainted with Scott Oliver through his recreational activities along the Tennessee River" in June 2020. *Id.* In October or November 2020, Oliver approached Doug "purporting to be interested in developing" the Property with the Mauldins to provide them "with residual income through property development." *Id.*

The Mauldins filed bankruptcy in the United States Bankruptcy Court for the Northern District of Mississippi on February 5, 2021. *Id.* at 3. Approximately six weeks later, on or about

3

March 23, 2021, Scott approached them "offering to form a company to transfer and develop the [Property] subject to the Bankruptcy Court's approval, liquidate their debts, and finance and obtain financing for the development of the [Property]." *Id.*

In July 2021, the Mauldins and Oliver "entered an agreement through which they agreed to form Lost Lakes LLC to develop lots and an RV Park" on the Property. *Id.* Under the contract, "Oliver would own 50% of the LLC while the Mauldins would own the other 50%;" "the Mauldins were to convey the [Property]" and "the LLC would assume the outstanding indebtedness of $3,700,000 secured by the property to First Bank;" Oliver "agreed to contribute $300,000 in cash to the LLC to develop riverview lots, a portion of the lot sales to be applied to the First Bank debt;" and Oliver "agreed to purchase a 100-acre parcel of land for $200,000 to be developed as an RV park with property to remain titled to Lost Lakes, LLC, until the FirstBank loan was satisfied, for the sales proceeds from that RV park being used to cover the development costs, and lease the 100 acres to the LLC for $50,000 per year." *Id.* at 3–4. The contract also required Oliver to "provide additional cash as needed by the LLC." *Id.* at 4.

Lost Lakes "was formed as a Tennessee limited liability company on July 13, 2021, with the Mauldins paying the $458.00 filing fee." *Id.* at 3. The parties "executed the Lost Lakes LLC agreement on July 27, 2021." *Id.* at 4. The terms of the LLC Agreement were consistent with the prior contract. *Id.*

In fall 2021, Oliver told Doug that "Peoples Bank told [him] that it would be better for him to let the Mauldins go into foreclosure and get their property in foreclosure at the courthouse steps." *Id.* at 5. Oliver reassured Doug "that he would never do that to him" and that "he intended to honor the prior agreements." *Id.* Meanwhile, the Mauldins were "marketing lots … with … fifty persons interested in purchasing lots developed on the [Property]." *Id.* Doug "performed and

4

supervised work, supplied material and equipment, and developed roads, drainage, and the [Property] pursuant to the parties' agreements and at … Oliver's request." *Id.*

On October 18, 2021, Lost Lakes changed its mailing address to Oliver's home address, at Oliver's request. *Id.* Approximately two weeks later, "Peoples Bank issued a loan commitment to Lost Lakes to purchase the [Property] from the Mauldins for a loan in the amount of $3.6 million." *Id.* A week later, on November 9, 2021, "Peoples Bank sent the commitment letter to FirstBank confirming it would refinance the loan secured by the [Property] with its members Sally Mauldin, Doug Mauldin, and Scott Oliver as guarantors." *Id.* However, "Oliver and Terrell Yeiser of People's Bank requested the Mauldins pay the taxes due and owing on the property and dismiss their bankruptcy before closing the loan." *Id.* at 6. When Doug "expressed his concern about being vulnerable to foreclosure when the bankruptcy was dismissed," Oliver assured him that "he would not take advantage of that circumstance and that Peoples Bank would pay FirstBank's loan off." *Id.*

The Mauldins' bankruptcy case was dismissed on December 13, 2021. *Id.* Oliver then asked Doug "to pay all back property taxes and the LLC would reimburse him with the funds the LLC was to receive pursuant to the contract, LLC Agreement, and Peoples Bank loan." *Id.* Doug paid $16,252.63 on December 14 and $14,384.29 on December 15 for the tax bill. *Id.*

> Oliver demanded material changes to the parties' agreements, demanding among the terms that his contribution be reduced and be treated as a loan rather than a contribution, that a bankruptcy of an LLC member would result in the dissolution of Lost Lakes LLC, that [he] have exclusive right and control of Lost Lakes' accounts, that [he] hold seventy percent of the Corporation, that two hundred acres instead of the original one hundred acres he agreed to be transferred to him of the Mauldins' property, instead of a ninety-nine year lease on behalf of the RV park for the corporation, the corporation would have a 15 year lease, and that the amount of his cash … he contributed to the corporation be changed.

*Id.* at 6–7. Oliver "advised the Mauldins that if they did not concede to his demands … he was no

5

longer interested in the land, that he could not afford it, and that the Bank would foreclose on their property." *Id.* at 7.

The Mauldins initiated a second bankruptcy proceeding on February 14, 2022. Doc. #15-2.[2] "Oliver obtained a deed [to the Mauldins' interest in the Property] in a foreclosure sale for $3,711,532.12 on February 18, 2022." Doc. #1 at 8. Subsequently, Oliver and Lost Lakes each filed a proof of claim in the Mauldins' bankruptcy case based on the LLC Agreement. Docs. #15-3, #15-4.

### IV
### Analysis

Oliver argues "[t]his matter should either be dismissed or referred to the U.S. Bankruptcy Court for the Northern District of Mississippi (the 'Bankruptcy Court') in accordance with the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc entered August 13, 1984 (the 'Order of Reference')" because the Mauldins filed a Chapter 11 petition in February 2022 and "remain debtors under Chapter 11." Doc. #16 at 1–2. He submits that because both he and Lost Lakes filed a proof of claim in the Bankruptcy Court "which relate to the exact same subject matter at issue in the Complaint, the claims asserted in the Complaint arise in the Bankruptcy Case such that the Bankruptcy Court has core jurisdiction over the matters." *Id.* at 3 (internal quotation marks omitted).

The Mauldins respond that "the standing order … does not apply because [their] claims do not arise under the bankruptcy code, and [they] have a right to a jury trial, which [Oliver] cannot circumvent by his objection and motion to refer this matter to the bankruptcy court." Doc. #18 at PageID 229. They "have no problem transferring this matter to the Bankruptcy Court so long as

---

[2] *See In re Mauldin*, No. 1:22-bk-10289-JDW, at Doc. #1 (Bankr. N.D. Miss. Feb. 14, 2022).

it can be decided by a jury" but if Oliver "will not consent to a jury trial in the Bankruptcy Court, [they] object to transferring the case there." *Id.* at PageID 228. They also argue that their filing of a bankruptcy petition does not amount to a waiver of their Seventh Amendment right to a jury trial. *Id.*

Oliver replies that the Order of Reference "does not determine whether a right to a jury trial exists or does not exist" but rather "provides that bankruptcy cases and related proceedings are referred to the Bankruptcy Court" which "is then in the position of determining whether [it] has jurisdiction to hear the matter and whether the Debtors have a right to a jury trial." Doc. #20 at 1. He asserts that the Mauldins' "arguments relating to whether they have a jury trial right should be reserved for argument before the Bankruptcy Court." *Id.* Oliver argues "the case law is clear that claims that will be necessarily resolved in the claims allowance process are core claims that are to be adjudicated by the Bankruptcy Court and no jury trial right exists" and "the process of allowance or disallowance of [his] and the LLC's claims in the Bankruptcy Case will necessarily resolve the claims that are asserted by [the Mauldins] against [him] in this proceeding." *Id.* at 1–2. Finally, he argues that "[i]f the Court were to determine that the claims in this Complaint are non-core claims that cannot be tried by the bankruptcy court, then the Court should dismiss the Complaint because there is no basis for federal court jurisdiction unless jurisdiction is established under 11 U.S.C. § 1334(b)." *Id.* at 2.

### A. Dismissal

As mentioned above, dismissal under Rule 12(b)(3) is only authorized "when venue is 'wrong' or 'improper' in the forum in which it is brought." *Atlantic Marine*, 571 U.S. 49 at 55. "[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a). "[A]n action

7

is related to bankruptcy if the outcome would alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Cain*, 585 B.R. 127, 135 (Bankr. S.D. Miss. 2018); *see In re Spillman Development Grp., Ltd.*, 710 F.3d 299, 304 (5th Cir. 2013) ("Proceedings are related to bankruptcy cases if their outcome could conceivably have any effect on the estate being administered in bankruptcy.") (internal quotation marks omitted).

The Mauldins' bankruptcy case is currently pending before the Bankruptcy Court. *See In re Mauldin*, No. 1:22-bk-10289-JDW, at Doc. #160 (Bankr. N.D. Miss. Nov. 11, 2022) (resetting hearing on objections to proof of claims for January 11, 2023). The Mauldins cannot genuinely dispute that this action is related to their bankruptcy since such is the basis of jurisdiction in their complaint. *See* Doc. #1 at 1. Further, because a judgment in the Mauldins' favor and any award of monetary damages would impact the bankruptcy estate, this action is related to the bankruptcy proceeding. *See In re Spillman*, 710 F.3d at 304. Thus, venue is proper and dismissal is not warranted.

**B. Referral**

Under 28 U.S.C. § 157(a), district courts "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." This Court's Local Rule 83.6 provides that "[a]ll cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this District pursuant to 28 U.S.C. § 157(a)." Since this Court already determined that the Mauldins' claims in this action are related to their bankruptcy case, referral pursuant to § 157(a) and Local Rule 83.6 is appropriate.

To the extent the parties dispute whether the Mauldins' claims are core proceedings in their

8

bankruptcy case and whether the Mauldins are entitled to a jury trial on their claims, this Court need not decide these issues for the referral to be proper. "It is the bankruptcy court's responsibility to determine whether each claim before it is core or non-core." *Exec. Benefits Ins. Agency v. Arkinson*, 134 S. Ct. 2165, 2171 (2014). And while the Bankruptcy Court can only conduct jury trials with the parties' consent, referral is still appropriate to allow the Bankruptcy Court "to resolve pre-trial matters" until "it is determined that a jury trial must be conducted." *Post Confirmation Bd. of Wadleigh Energy Grp., Inc. v. Wadleigh*, 516 B.R. 850, 854–55 (Banrkr. E.D. La. 2014) (collecting cases). Upon referral, the Bankruptcy Court will be able to determine whether this action is a core proceeding and handle any pretrial matters until it is clear a jury trial is necessary, at which point the referral may be properly withdrawn. *Id.*

## V
## Conclusion

Oliver's motion [15] is **GRANTED in Part and DENIED in Part**. It is GRANTED to the extent is seeks referral to the Bankruptcy Court and DENIED in all other respects. This case is **REFERRED** to the United States Bankruptcy Court for the Northern District of Mississippi.

**SO ORDERED**, this 16th day of December, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**